Doyle LOMAX, et. al., Plaintiffs,

v.

WOODMEN OF THE WORLD LIFE INSURANCE SOCIETY and/or Omaha Woodmen Life Insurance Society, Defendant.

No. CIV.A.1:01–CV–2134WBH.

United States District Court,
N.D. Georgia,
Atlanta Division.

July 16, 2002.

Michael Lee McGlamry, Elizabeth Pope Holmes, Pope McGlamry Kilpatrick Morrison & Norwood, Atlanta, GA, Charles Neal Pope, Wade H. Tomlinson, III, Pope McGlamry Kilpatrick & Morrison, Columbus, OH, for plaintiffs.

Daniel S. Reinhardt, Alan William Loeffler, Kevin Allen Maxim, Troutman Sanders, Atlanta, GA, Archibald T. Reeves, IV, pro hac vice, Walter T. Gilmer, Jr., pro hac vice, McDowell Knight Roedder & Sledge, Mobile, AL, for defendant.

## ORDER

HUNT, District Judge.

This civil action is before the Court on Defendant's Motion to Compel Arbitration [4], Plaintiffs' Motion to Conduct Discovery on the Arbitrability of this Case [17], Plaintiffs' Motion to Amend Preliminary Response to Defendant's Motion to Compel Arbitration [18], and Defendant's Motion to Strike Plaintiffs' Sur-reply Brief and/or File a Response Thereto [24]. For the reasons stated below, Defendant's Motion to Compel Arbitration [4] is GRANTED, Plaintiffs' Motion to Conduct Discovery on the Arbitrability of this Case [17] is DENIED AS MOOT, Plaintiffs' Motion to Amend Preliminary Response to Defendant's Motion to Compel Arbitration [18] is GRANTED, and Defendant's Motion to Strike Plaintiffs' Sur-reply Brief and/or File a Response Thereto [24] is GRANTED.

## I. BACKGROUND

Defendant Woodmen is a fraternal benefit society that provides life insurance to its members. Plaintiffs filed suit against Woodmen challenging the conversion of whole life insurance certificates, which retained residual cash value, to "flexible life insurance" or "adjustable life insurance" certificates. According to Plaintiffs, the new policies did not perform as represented by Woodmen. Plaintiffs assert state law claims for breach of fiduciary duty, fraud, Georgia RICO violations, negligence, and breach of duty of good faith and fair dealing. They also petition for class certification.

Woodmen filed the present motion to compel arbitration. The Woodmen constitution, as of 1996, contains a Problem Resolution Procedure, which provides that all disputes between the society and its members, benefit certificate holders or beneficiaries are subject to a three step process requiring informal negotiations, mediation, and binding arbitration.[1] Plaintiffs bypassed the Problem Resolution Procedure and filed this case instead. Defendant now asks the Court to compel Plaintiffs to arbitrate these claims in accordance with the agreement between the parties. Plaintiffs oppose the motion.

## II. DISCUSSION

In order to determine whether arbitration should be compelled, the Court must assess whether: "(1) there is a valid written agreement to arbitrate; (2) the issue [sought to be arbitrated] is arbitrable under the agreement; and (3) the party asserting the claims has failed or refused to arbitrate the claims." *Collins v. International Dairy Queen, Inc.*, 2 F.Supp.2d 1465, 1468 (M.D.Ga.1998); *Goldberg v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 650 F.Supp. 222, 225 (N.D.Ga.1986)(citing 9 U.S.C. §§ 2–4 and *Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967)).

Furthermore, the Court bears in mind that the Federal Arbitration Act

---

1. A copy of the Problem Resolution Procedures ("PRP") is attached as Exhibit E to Defendant's Motion to Compel Arbitration [4]. The PRP provides for a three step process: first, the parties must participate in informal negotiations with a Problem Resolution Officer; second, if unsuccessful, the parties participate in mediation, which is governed by the applicable mediation rules of the American Arbitration Association; and third, if mediation does not resolve the issue, the parties submit the issue to binding arbitration, which is governed by the applicable arbitration rules of the American Arbitration Association.

("FAA") creates a strong policy favoring arbitration if the parties have agreed to it. *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987); *Ivax v. B. Braun of America*, 286 F.3d 1309, 1315 (11th Cir.2002); *Randolph v. Green Tree Financial Corp.—Alabama*, 244 F.3d 814 (11th Cir.2001); *see also Moses H. Cone Memorial Hospital v. Mercury Constr.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); *Ceco Concrete Construction v. J.T. Schrimsher Construction Co.*, 792 F.Supp. 109, 110 (N.D.Ga.1992). While arbitration agreements are creatures of contract and must be treated accordingly, courts must also be aware of the presumption in favor of arbitration in case of a contractual ambiguity. *Moses H. Cone*, 460 U.S. at 24–25, 103 S.Ct. 927, *Scott v. Prudential Securities, Inc.*, 141 F.3d 1007, 1011 (11th Cir.1998); *see also, Collins v. International Dairy Queen, Inc.*, 2 F.Supp.2d 1473, 1478 (M.D.Ga.1998)(explaining that the "general principle relating to contracts [that the contract should be construed against the drafter in the case of ambiguity] is superseded by the federal policy which requires that construction of the contract language is to be resolved in favor of arbitration where there are doubts as to the parties' intentions").

There does not appear to be any substantive disagreement between the parties that the dispute between them is arbitrable under the agreement. *Collins*, 2 F.Supp.2d at 1468.[2] Additionally, there is also no dispute that Plaintiffs failed to trigger the three step Problem Resolution Procedure before filing this lawsuit. Therefore, the issue before the Court is the quintessential question in these situations— whether there is a valid agreement to arbitrate. A written agreement satisfies this first requirement if it is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or equity for the revocation of any contract." 9 U.S.C. § 2.

Plaintiffs argue that the Defendant's Problem Resolution Procedure ("PRP"), compelling arbitration, is not enforceable for the following reasons: (1) the PRP is vague and ambiguous; (2) the PRP contains conflicting provisions concerning costs; and (3) the PRP is unconscionable. Alternatively, Plaintiffs argue that if the Court compels arbitration in this matter, the Georgia Arbitration Act should apply to the process and not the Federal Arbitration Act. The Court will address each of these arguments in turn.[3]

■ First, as a matter of law, and in light of the policy to resolve ambiguities in favor of arbitration in these situations, the Court concludes that the PRP is not vague or ambiguous. Whether a contract is ambiguous is a question of law for the Court. *Collier v. State Farm Mutual Auto. Ins. Co.*, 249 Ga.App. 865, 549 S.E.2d 810, 811 (2001). A contract is ambiguous when a term or condition is uncertain in meaning, or can be fairly understood in more than one way. *Kerr–McGee v. Georgia Cas. and Sur. Co.*, 256 Ga.App. 458, 568 S.E.2d

---

2. The Problem Resolution Procedures applies "whenever a member or benefit certificate owner or beneficiary of the Society makes a claim for damages, or claims any form of redress for a violation of his or her individual rights or a denial of individual privileges or benefits which he or she claims as a member or benefit certificate owner or beneficiary." (Exhibit E, p. 3 to Defendant's Motion to Compel Arbitration [4]).

3. As an initial matter, with respect to the facts of this case, the Court recognizes that, as a Fraternal Benefit Society, Defendant is governed by O.C.G.A. § 33–15–1, *et seq.*, and is generally exempt from Georgia insurance laws unless the particular insurance law is expressly made applicable to a fraternal benefit society. O.C.G.A. § 33–15–82.

484, 486 (2002). When the Defendant adopted the PRP, it provided its members with a "Problem Resolution Guide for Members" that contained an address and toll free number to contact with questions. Additionally, Defendant printed the new policy in its magazine for its members, "The Woodmen Magazine," in two different issues. Therefore, Plaintiffs' argument that the PRP did not provide its members with sufficient information about the changes, or who to contact with questions about the PRP is without merit. Additionally, Plaintiffs' argument that the applicable rules of the AAA are not sufficiently clear— rules that are consistently used by the legal community both in and out of the United States— is simply unpersuasive.

Second, Plaintiffs argue that the arbitration clause is ambiguous because it contains conflicting provisions concerning costs. The PRP provides that costs, excluding attorneys' fees, will be paid by the Defendant. However, the AAA provides that certain costs must be borne by the claimant. However, as Defendant points out, Rule 1 of the AAA Commercial Rules provides that the parties may agree to vary the procedures set forth in the AAA rules. Defendant stipulates that, in accordance with the PRP procedures, it will bear the costs of arbitration with the Plaintiffs. Therefore, the Court finds no merit in Plaintiffs' argument on this issue of costs.

 Third, Plaintiffs argue that the PRP is procedurally and substantively unconscionable. "Procedural unconscionability addresses the process of making the contract, while substantive unconscionability looks to the contractual terms themselves." *NEC Technologies, Inc. v. Nelson,* 267 Ga. 390, 478 S.E.2d 769, 771 (1996). Plaintiffs argue procedural unconscionability because the PRP is not in bold-face type, it does not provide a telephone number or address for questions, and it does not require the members' signatures acknowledging an agreement to participate. All of these arguments are without merit. The parties have not relied on, nor can the Court locate, any Georgia case requiring that arbitration clauses be set forth in bold-face type in order to be conscionable. Furthermore, the United States Supreme Court explains that any such requirement would likely be impermissible because states may not single out arbitration clauses for stricter scrutiny, but must instead treat them on "equal footing" with other contracts. *Doctor's Assocs., Inc. v. Casarotto,* 517 U.S. 681, 686, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996). Therefore, Plaintiffs' argument that the PRP must be set forth in bold-faced type is meritless. Additionally, by virtue of O.C.G.A. § 33–15–63(b),[4] Plain-

---

4. The relevant portions of O.C.G.A. § 33–15–63 state:

(a) Every society authorized to do business in this state shall issue to each owner of a benefit contract a certificate specifying the amount of benefits provided thereby. The certificate, together with any riders or endorsements attached thereto, the laws of the society, the application for membership, the application for insurance and declaration of insurability, if any, signed by the applicant, and all amendments to each thereof shall constitute the benefit contract, as of the date of issuance, between the society and the owner, and the certificate shall so state.

(b) Any changes, additions, or amendments to the laws of the society duly made or enacted subsequent to the issuance of the certificate shall bind the owner and the beneficiaries and shall govern and control the benefit contract in all respects the same as though such changes, additions, or amendments had been made prior to and were in force at the time of the application for insurance, except that no change, addition, or amendment shall destroy or diminish benefits which the society contracted to give the owner as of the date of issuance.

tiffs' benefit certificates, which they signed, specifically incorporated and adopted the Woodmen constitution and laws *and* any amendments thereto. Therefore, Plaintiffs, by becoming members of the Woodmen society, specifically agreed to be bound by amendments to the organization's constitution, and their argument that they did not sign the agreement, nor receive any consideration for the agreement, is without merit. *See, Woodmen of the World Life Ins. Society v. Harris,* 740 So.2d 362, 367 (Ala.1999)(relying on *Casarotto* to reject argument that Woodsmen's PRP lacks enforceability because the plaintiff did not sign the document containing the arbitration clause); *see also, W.L. Jorden & Co. v. Blythe Industries, Inc.,* 702 F.Supp. 282, 283–84 (N.D.Ga.1988)(Evans, J.)(concluding that when an arbitration clause is incorporated into a larger unitary contract, the consideration for the contract as a whole is sufficient to support the arbitration clause; and rejecting the argument that separate or additional consideration was required to bind Plaintiffs to an arbitration clause). Additionally, as explained above, the Defendant adequately informed its members about the adoption of the PRP, and provided a sufficient mechanism by which members could ask questions if they wished.[5]

██ With respect to substantive unconscionability, Plaintiffs argue that the PRP's prohibition of attorneys' fees, unless otherwise required by law, and its ban on class wide arbitration renders the clause unconscionable. The Court disagrees. First, the arbitration clause is clear that it prohibits an award of attorneys' fees *unless* such award is otherwise required by law. Therefore, it appears to the Court, and Defendant concedes, that this arbitration clause will not deprive Plaintiffs of any substantive statutory rights, including an award of attorneys' fees, if warranted under applicable Georgia law. Second, Defendant's arbitration clause requires that all claims be decided individually and precludes class-wide arbitration. Generally, prohibiting class-wide arbitration does not render an otherwise valid arbitration clause unconscionable. *See Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 32, 111 S.Ct. 1647, 1655, 114 L.Ed.2d 26 (1991)(compelling arbitration of ADEA claims even though arbitration clause prohibited class-wide arbitration); *Randolph,* 244 F.3d at 816 (enforcing arbitration of Truth In Lending Act claims even though arbitration agreement prohibited class-wide arbitration); *see also, Protective Life Ins. Corp. v. Lincoln Nat'l Life Ins. Corp.,* 873 F.2d 281, 282 (11th Cir.1989)(agreeing with several other circuit courts that a district court may not order class-wide arbitration of claims if the arbitration agreement does not specifically provide the parties with this form of remedy). Therefore, in light of the reasoning of these cases, the Court concludes that the prohibition of class-wide arbitration does not, without more, render the arbitration clause of the PRP unconscionable.

██ In conclusion, after considering all of Plaintiffs' objections, the Court finds that a valid agreement to arbitrate these grievances exists in this instance. Finally, the Court also concludes, after considering Plaintiffs' arguments to the contrary, that the Federal Arbitration Act applies in this case, not the Georgia Arbitration Act. First, the transactions at issue in this case involve interstate commerce. The benefit certificates were issued in Nebraska, at Defendant's place of incorporation, and mailed to Georgia. The premiums for

---

5. The Court also finds, contrary to Plaintiffs' assertions, that the record demonstrates that Defendant properly filed a certified copy of the amendments at issue in this case with the Georgia Insurance Commissioner as required by O.C.G.A. § 33–15–41(d).

Plaintiffs' certificates were delivered to Defendant's offices in Nebraska through electronic fund transfers. Therefore, the FAA is applicable in this instance. *See* 9 U.S.C. § 2 ("a contract evidencing a transaction involving interstate commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."); *see also, See Woodmen of the World Life Insurance Society v. White*, 35 F.Supp.2d 1349, 1355 (M.D.Ala.1999)(concluding that an interstate connection existed based upon the mailing of the benefit certificate from Nebraska to Alabama); *Clayton v. Woodmen of the World Life Ins. Society*, 981 F.Supp. 1447, 1449–51 (M.D.Ala.1997)(same).

Second, while the parties agree that the dispute concerning the *benefit certificates* at issue in this litigation are governed by Georgia law, the PRP does *not* specify that its procedures, including arbitration, are governed by state law. Instead, the PRP makes several references to "applicable law," not state law, which indicates that either federal or state law could apply, depending on the circumstances. *See White*, 35 F.Supp.2d at 1354 (concluding that the words "applicable law" in the same PRP at issue in this litigation refers to both state and federal law). In this case, the transaction at issue involved interstate commerce, the FAA applies to arbitration agreements involving interstate commerce, and the parties did not specifically agree to arbitrate according to state law, as they did with regard to the benefit certificates; therefore, the Court concludes that the FAA governs the resolution of this dispute. *See Perry v. Thomas*, 482 U.S. 483, 489, 107 S.Ct. 2520, 2525, 96 L.Ed.2d 426 (1987)(explaining that the effect of the FAA "is to create a body of substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act."); *see also, Volt Information Sciences, Inc. v. Board of Trustees*, 489 U.S. 468, 474–75, 109 S.Ct. 1248, 1253, 103 L.Ed.2d 488 (1989)(compelling arbitration under California law because the parties' agreed to arbitrate in accordance with California law).[6]

### III. CONCLUSION

 For the reasons stated above, Defendant's Motion to Compel Arbitration [4] is GRANTED. This action is STAYED pursuant to 9 U.S.C. § 3, and the Clerk of the Court is DIRECTED to ADMINISTRATIVELY CLOSE this case.[7] Additionally, Plaintiffs' Motion to Conduct Discovery on the Arbitrability of this Case [17] is DENIED AS MOOT, Plaintiffs' Motion to Amend Preliminary Response to Defendant's Motion to Compel Arbitration [18] is GRANTED, Defendant's Motion to Strike Plaintiffs' Sur-reply Brief and/or File a Response Thereto [24] is GRANTED.[8]

---

**6.** In *Volt*, the entire contract between the parties, including the agreement to arbitrate, called for the application of California law. Here, the PRP at issue specifically references "applicable law," not state law, while the benefit certificates state that "the terms of the *certificate* will be governed by the laws of the state where it is delivered," which in this instance is Georgia. As explained above, the Court interprets this difference to mean that under the PRP, the parties did not agree that only Georgia law would apply.

**7.** Administratively closing a case is a docket control device used by the Court for statistical purposes and does not prejudice the rights of the parties to this litigation in any manner.

**8.** After the close of briefing on this motion, and in contravention of the Local Rules of this Court, Plaintiffs filed a 12 page sur-reply

concerning arbitration [23] wherein they presented new legal arguments in support of their position. Plaintiffs fail to provide *any* reason for the delay in asserting these legal arguments, which are not novel. Accordingly, the Court declines to consider them and Defendant's Motion to Strike Plaintiffs' Surreply brief [23] is GRANTED.